The order below is hereby signed.

Signed: March 4 2021



Elizabeth L. Gunn
U.S. Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | Case No. 20-00157-ELG |
| Kehinde A. Taiwo,<br>Debtor. | Chapter 13 |

### MEMORANDUM DECISION AND ORDER APPROVING IN PART AND DENYING IN PART COUNSEL'S APPLICATION FOR COMPENSATION

The Court has before it the *Application for Allowance of Compensation* (the "**Application**") filed by counsel ("**Counsel**") for the debtor (the "**Debtor**") in the above-captioned bankruptcy case. ECF No. 48. In the Application, Counsel seeks approval of compensation in the amount of $4,500.00, of which $1,500.00 was paid prior to the filing of the petition and is represented to remain in Counsel's escrow account pending an order approving compensation. For the reasons set forth below, the Court will approve the Application in part, granting Counsel an allowed administrative expense in the amount of $2,500.00, authorizing the chapter 13 trustee to disburse the unpaid $1,000.00 to Counsel, and disallowing the remaining $2,000.00, but providing Counsel fourteen (14) days from entry of this Order to file a supplemental application with an invoice reflecting contemporaneous time entries in support of the disallowed amount.

## I. Facts

The Debtor commenced this case on March 16, 2020 under Chapter 13 of Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as hereafter amended, the "**Bankruptcy Code**"). In the *Disclosure of Compensation of Attorney for Debtor* (the "**Disclosure**"), ECF No. 1, at 44, filed by Counsel contemporaneously with the Debtor's petition, a flat fee agreement for representation in this chapter 13 case was disclosed in an amount of $4,500.00, of which $1,500.00 had been received pre-petition, with a remaining balance due of $3,000.00. *Id.* Counsel additionally disclosed that his representation of the Debtor included "Negotiations with secured creditors to reduce to market value; exemption planning; preparation and filing of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 [U.S.C. §] 522(f)(2)(A) for avoidance of liens on household goods." *Id.* Counsel's flat fee did not include "Representation of the debtors [sic] in any dischargeability actions, judicial lien avoidances, relief from stay actions[,] or any other adversary proceeding." *Id.*

In order to evaluate Counsel's request for fees in this case, a brief review of the history of the case is required. On the petition date, in addition to the Debtor's Petition, Counsel filed a proposed Chapter 13 Plan (the "**First Plan**") (ECF No. 2) and a *Motion to Extend Automatic Stay or in the Alternative, Impose the Automatic Stay* (the "**Motion to Extend Stay**") (ECF No. 10), as the instant case was the second filing by the Debtor within a twelve-month period. The Court entered an order granting the Motion to Extend Stay on April 7, 2020. ECF No. 16. The First Plan was first set for a confirmation hearing on May 15, 2020 that was continued by agreement several times until October 16, 2020.[1]

---

[1] After Judge Gunn was appointed to the bench, this case was transferred to her on September 10, 2020.

On August 7, 2020, HSBC Bank USA, N.A., as Trustee for the Registered Holders of Nomura Home Equity Home Loan, Inc. Asset-Backed Certificates, Series 2007-2 ("**HSBC**") filed for relief from both the automatic stay and the co-debtor stay (the "**Motion for Relief**"). ECF No. 24. On August 27, 2020, Counsel filed a standard form *Opposition* (the "**Opposition**") (ECF No. 30). Following the filing of the Opposition, the parties negotiated and submitted what the Court will describe as a basic *Agreed Order and Stipulation Modifying Automatic Stay* (ECF No. 32), which the Court entered on September 11, 2020. ECF No. 34. As a result of the resolution, neither Counsel nor counsel for HSBC appeared for the September 3, 2020 hearing on the Motion for Relief.

On October 16, 2020, the Court held a confirmation hearing on the Debtor's First Plan. At the conclusion of the hearing, and by order entered that same day, the Court denied confirmation of the First Plan pursuant to the chapter 13 trustee's recommendation and gave the Debtor twenty-one (21) days to file an amended chapter 13 plan or the case would be dismissed. ECF No. 37. However, despite the terms of the Order, the Court neglected to dismiss the Debtor's case after the expiration of the 21-days when the Debtor failed to timely file an amended plan. Instead, the case remained open and the Debtor ultimately filed an untimely amended plan (the "**Second Plan**") on December 16, 2020, forty-one (41) days after entry of the previous Order. A confirmation hearing on the Second Plan was scheduled for January 22, 2021.

In conjunction with filing the Second Plan, Counsel filed objections to two proofs of claim (together, the "**Objections**") held by the mortgage holders in this case, HSBC and U.S. Bank, N.A. ECF Nos. 40 and 43. The hearing on such objections was noticed by Counsel for February 4, 2021, after the confirmation hearing on the Second Plan. The Court held the second confirmation hearing

on January 22, 2021, and notwithstanding the pending Objections, the Court denied confirmation of the Second Plan without leave to amend and found that cause existed to dismiss the instant case under § 1307 of the Bankruptcy Code, including but not limited to § 1307(c)(5). ECF No. 52. However, in order to provide Counsel an opportunity to file this Application prior to dismissal, the Court gave the Debtor fourteen days to convert the case to one under another chapter or to voluntarily dismiss the case. *Id.* Due to the pending dismissal, the Court continued the hearings on the Objections to February 19, 2021, ECF No. 51, and later cancelled the hearings indefinitely pending entry of this Order and dismissal of the Debtor's case. The Debtor withdrew the Objections on February 25, 2021. ECF No. 56.

## II. Discussion

The Court has before it an application for compensation filed by Counsel in a chapter 13 case in which a plan was never confirmed and that the Court has determined there is cause to dismiss. In its review of Counsel's request, the Court not only considers the Application, but also takes judicial notice of the totality of the docket and pleadings in this case, and reviews the relief requested therein in conjunction with the content, quality, presentation, and timeliness of all pleadings in the docket for this matter.

In the Application, Counsel indicates that the services rendered to the Debtor for which he seeks compensation were "(a) Examining and analyzing the debtor's financial situation[;] and (b) Preparing and filing the Debtor(s) Objection to two (2) Proofs of Claim and other necessary documents and pleadings in the case for the debtor's Chapter 13 Plan." Application at 1-2. The Court is mindful of the prevalence of form pleadings used by practitioners, but at the same time is troubled that Counsel only minimally modified his Application from a standard application

reflecting a case that resulted in a confirmed plan. The Court recognizes and seeks to balance the practical reality that while all chapter 13 cases should be projected to succeed at the time of filing, many will ultimately fail, and at the same time, counsel deserve to be compensated for services in cases to be dismissed before confirmation, as in this case. However, the Court is simultaneously cognizant that the services rendered in such cases can be substantially less than those rendered throughout the entirety of a successful chapter 13 case, and the fees the Court awards must be reasonable and proportional thereto consistent with the requirements of 11 U.S.C. § 330. *See* fuller discussion *infra*.

The Court appreciates (i) the amount of work provided by counsel to chapter 13 debtors prior to confirmation of a plan, (ii) that many times counsel receive only a small (or no) pre-petition deposit, and (iii) that counsel may only receive compensation from or through the chapter 13 trustee. In a pre-confirmation case to be dismissed, the chapter 13 trustee generally holds undisbursed funds paid under a proposed plan. *See* 11 U.S.C. § 1326(a)(1) (requiring a debtor to begin payments to the chapter 13 trustee not later than 30 days after the date of filing of the petition). Pursuant to § 1326(a)(2) of the Bankruptcy Code, if a chapter 13 plan is "not confirmed," the chapter 13 trustee must return to the debtor any funds held less the amount of any unpaid claim allowed under § 503(b) of the Bankruptcy Code. 11 U.S.C. § 1326(a)(2).[2] This Court joins the majority of Courts and finds that § 1326(a)(2) authorizes the chapter 13 trustee to pay allowed administrative claims prior to returning any remaining funds to the debtor when a chapter 13 case is dismissed pre-confirmation. *See In re Ward*, 523 B.R. 142, 147-48 (E.D. Wis. 2014) (analyzing

---

[2] The Court notes that in practice and for practical purposes of avoiding return of funds which would immediately have to be repaid, when a confirmation of a plan is denied with leave to amend, chapter 13 trustees generally retain funds pending the filing of a modified plan.

cases and finding that "11 U.S.C. § 1326(a)(2) applies . . . much more closely to [post-petition plan payments] than 11 U.S.C. § 349(b)(3), which would apply only to the pre-petition estate"); *In re Elms*, 603 B.R. 11, 15 n.10 (Bankr. S.D. Ohio 2019) (noting that § 1326(a)(2) allows payment of administrative expenses only in a case dismissed pre-confirmation, in the course of directing the chapter 13 trustee to return all funds held to the Debtor in a case dismissed post-confirmation); *In re Jankauskas*, 593 B.R. 1, 5 (Bankr. N.D. Ga. 2018) (noting that § 1326(a)(2) provides for returning payments made by a debtor and held by the chapter 13 trustee back to the debtor less allowed administrative expenses after pre-confirmation dismissal, in the course of holding that § 1326(a)(2) does not apply to funds held by the chapter 13 trustee paid by other sources) (citing *In re Hamilton*, 493 B.R. 31, 34-37 (Bankr. M.D. Tenn. 2013) (comparing cases disposing of plan payments held by the chapter 13 trustee pre- and post-confirmation at 34 nn.4-5, in the course of determining disposition of funds held by the chapter 13 trustee upon post-confirmation dismissal)); *In re Gonzales*, 578 B.R. 627, 628 (Bankr. W.D. Mich. 2017) (noting that the Code requires the trustee to return funds to the debtor upon a pre-confirmation dismissal after deducting allowed administrative claims, in the course of holding that the chapter 13 trustee may not further disburse funds to creditors after a post-confirmation dismissal, nor can counsel be paid under § 349(b)(3)). *But cf. In re Bateson*, 551 B.R. 807, 813 (Bankr. E.D. Mich. 2016) (finding that the chapter 13 trustee's duty to implement § 1326(a)(2) terminates immediately upon dismissal, albeit in the context of a post-confirmation dismissal). The third sentence of § 1326(a)(2), operative when a plan is "not confirmed," guides the trustee's action upon a pre-confirmation dismissal. There is no conflict with § 349(b)(3), which returns estate property to its *pre-petition* source, as § 1326(a)(2) disposes of estate property arising from the debtor's *post-petition* payments by paying allowed

administrative claims from those funds and returning any remaining balance to the debtor. Maintaining the viability of the third sentence upon dismissal is also consistent with practice, as a chapter 13 trustee typically returns funds under that provision only when a case is dismissed, and not merely when plan confirmation is denied with leave to amend. *But see In re Lewis* 346 B.R. 89, 104-05 (Bankr. E.D. Pa. 2006) (finding that the third sentence of § 1326(a)(2) no longer applies after a pre-confirmation dismissal, but it nevertheless constitutes cause to permit payment of even a pending but not yet approved fee application under § 349(b)(3)). While the Court finds that the third sentence of § 1326(a)(2) remains applicable upon dismissal, the Court further finds that in order for debtor's counsel in such a chapter 13 case to be entitled to payment under § 1326(a)(2), counsel's fees must be approved by this Court (i.e., counsel must hold an "unpaid claim allowed under section 503(b)") prior to dismissal.

In the Application, Counsel has requested approval of the full $4,500.00 agreed to with the Debtor as a flat fee for representation throughout the entirety of this case, subject to certain exclusions, without any time entries or other justification to support such request. While the Court does not have a presumptively reasonable flat fee in chapter 13 cases, it has generally recognized those of the neighboring jurisdictions of the Eastern District of Virginia ($5,488.00), *see* "Adjustment of Dollar Amounts" pursuant to E.D. Va. LBR 2016-1(C), and the District of Maryland ($4,925.00, "for all matters in the main case . . . . [except] for work done upon matters that were not reasonably expected and that are extraordinary."), *see* D. Md. LBR App. F, as reasonable for purposes of 11 U.S.C. § 330. The District of Maryland has three tiers of flat fees corresponding to representation through (1) plan confirmation, (2) 90 days after confirmation, and (3) through the entire case. *Id.* Counsel's flat fee in this case, $4,500.00, is below the amounts for

a complete case in each of the Court's neighboring districts, and would therefore generally fall within the Court's recognized range of fees meeting the standard of reasonableness in this District for a complete chapter 13 representation through discharge. However, as this case is ripe for dismissal, it will never reach confirmation of a chapter 13 plan.

With these standards in mind, the Court must address two issues in order to fully consider the Application. First, what is the appropriate test to determine Counsel's "reasonable compensation" for representation in a chapter 13 case within the meaning of § 330(a)(3) and (a)(4)(B) of the Bankruptcy Code? *See Younger v. Pa. Res. Corp.* (*In re Younger*), 360 B.R. 89, 95 (Bankr. W.D. Pa. 2006) (citing, *inter alia*, *Lamie v. U.S. Trustee*, 540 U.S. 526, 541 (2004)) (finding that chapter 13 cases are compensated under § 330(a)(4)(B) rather than § 330(a)(1)(A)). Second, under the appropriate test, what is "reasonable compensation" for this chapter 13 case, which stands to be dismissed pre-confirmation?

### A. The Appropriate Metric for "Reasonable Compensation"

In this Circuit, to determine the reasonableness of fees, applications for compensation are analyzed under a three-part process that determines a "lodestar"—consisting of (1) the reasonable hourly rate for each person for whom compensation is requested, and (2) the number of hours reasonably expended by each such person—and then determines (3) any adjustments warranted to the lodestar. *See Makray v. Perez*, 159 F. Supp. 3d 25, 30 (D.D.C. 2016) (first citing *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015), and then citing *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 61 (D.C. Cir. 2015)). Factors relevant to each person's reasonable hourly rate include, at minimum (1) the person's "billing practices," i.e., the actual non-reduced rate they have charged or could have realistically charged clients; (2) their skill, experience, and

reputation[3] in bankruptcy; and (3) prevailing market rates in the community. *See* 11 U.S.C. § 330(a)(3); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010); *Eley*, 793 F.3d at 100 (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)); *Covington*, 57 F.3d at 1107-08. Between the prevailing weight and an attorney's customary rate, the local prevailing rate receives heavier weight. *See Makray*, 159 F. Supp. 3d at 30 (quoting *West v. Potter*, 717 F.3d 1030, 1034 (D.C. Cir. 2013), 37 (quoting *Perdue*, 559 U.S. at 551-52), 40-41 (first quoting *Save Our Cumberland Mountains, Inc. v. Hodel* ("*SOCM*"), 857 F.2d 1516, 1524 (D.C. Cir. 1988), and then quoting *Eley*, 793 F.3d at 105); *see also id.* at 44 (comparing *Perdue*, 559 U.S. at 551, with *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). Once the lodestar, incorporating the reasonable rate and reasonable hours, has been determined, there is a strong presumption that the fee based upon the lodestar itself is reasonable. *Id.* at 30 (quoting *West*, 717 F.3d. at 1034), 37-38 (quoting *Perdue*, 559 U.S. at 551-52, 553-54). Thus, adjustments *to* the lodestar, beyond specific refinements made in determining the reasonable rate and reasonable hours *within* the lodestar itself, must be carefully and specifically justified. *See Perdue*, 559 U.S. at 546, 551, 554 (eschewing the earlier *Johnson* methodology, but perhaps not

---

[3] The D.C. Circuit has incorporated these "*Johnson*" factors in its formulation of an attorney's reasonable market rate. See *Covington*, 57 F.3d at 1108 n.16 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). The "customary fee for like work" is another relevant *Johnson* factor. *Id.* The Court may incorporate other factors, including other *Johnson* factors, that it considers relevant to determining an attorney's reasonable hourly rate. Other *Johnson* factors that may bear on the "ability" or "skill" of an attorney, and thereby on the attorney's reasonable hourly rate, and/or on the reasonable hours may include the "novelty and difficulty" of the legal services performed, and the results obtained to the extent that those results reflect on the attorney's "skill and ability"—but it is important to avoid double-counting factors, such as where the "difficulty" or "results" of a specific case may be reflected in the attorney's rate ("skill" level) as well as in the hours expended. These factors can have an inverse relationship where, in certain cases, a junior attorney might achieve the same results as an experienced attorney but will expend more hours to do so; the lodestar fee may be the same for each attorney. *See Perdue*, 559 U.S. at 553, 555; *Makray*, 159 F. Supp. 3d at 43; *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 207 (quoting *Perdue*, 559 U.S. at 553). "Since an attorney's total fee award is determined by multiplying the number of hours expended by the hourly rate, reducing the Laffey rates to reflect the brevity of the case improperly accounts for the length of the proceedings twice." *Flood*, 172 F. Supp. 3d at 208 (quoting *Merrick v. District of Columbia*, 134 F. Supp. 3d 328, 339 (D.D.C. 2015)).

its "factors" when used to determine rather than to depart from the lodestar, and directing a "strong presumption that the lodestar figure is reasonable, but [noting] that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee"); *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 215 n.8 (D.D.C. 2016) (quoting *SOCM*, 857 F.2d at 1522); *Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 130 (D.D.C. 2012) (first quoting *Swedish Hospital v. Shalala*, 1 F.3d 1261, 1267 n.3 (D.C. Cir. 1993), and then quoting *Perdue*, 559 U.S. at 546).

Precise information as to hours expended is not generally available in a chapter 13 case where counsel and the debtor agree to proceed under a flat fee arrangement and the flat fee corresponds with a "presumptively reasonable" or "no-look" fee. In general, attorneys who choose a flat fee do so, in part, to dispense with documenting their actual hours expended on specific tasks. *See In re Smith*, Case No. 20-01278, 2021 WL 389381, at *7 (Bankr. D.S.C. Jan. 28, 2021); *In re Long*, 553 B.R. 266, 274-75 (Bankr. M.D. Pa. 2016) (citing, *inter alia*, *Law Offices of David A. Boone v. Derham–Burk (In re Eliapo)*, 468 F.3d 592, 599 (9th Cir. 2006)); *In re Beale*, 553 B.R. 69, 74 (Bankr. E.D. Va. 2016). However, counsel may need to have this information available if a party-in-interest raises an objection or if the Court otherwise finds it prudent to review the proposed fee in a specific case. S*ee In re Beale*, 553 B.R. at 75-76 (Bankr. E.D. Va. 2016). As one bankruptcy court noted:

> The use of a Presumptively Reasonable Fee merely obviates the need for an attorney, in most cases, to keep contemporaneous time records, file a fee application, and attend a hearing on the fee application when requesting the Presumptively Reasonable Fee. However, the use of the Presumptively Reasonable Fee does not deny the debtor or any other party in interest the right to object to the Presumptively Reasonable Fee in a particular case. In such a case, the objecting party will have the burden of rebutting the reasonableness of the Presumptively Reasonable Fee. In other words, an attorney who attempts to realize the benefits of

> the Presumptively Reasonable Fee does so at his or her peril if someone objects, as the attorney may not have kept supporting, contemporaneous time records.

*In re Debtor's Attorney Fees in Chapter 13 Cases*, 374 B.R. 903, 908-09 (Bankr. M.D. Fla. 2007).

Thus, in this Circuit, the Court must modify the lodestar approach when there is reason to question the reasonableness of a flat fee that represents, and is substituted for, the lodestar in a specific case, particularly where counsel has not provided the actual hours expended. This requires adjusting the rate and hours incorporated in the flat fee to account for subsequent developments in a case that render original flat fee unreasonable, such as by estimating the fewer hours reasonably expended in a chapter 13 case that will be dismissed pre-confirmation.

### B. Counsel's Application is Unreasonable

Counsel seeks payment for what can be categorized as basic chapter 13 services: "(a) Examining and analyzing the debtor's financial situation[;] and (b) Preparing and filing the Debtor(s) Objection to two (2) Proofs of Claim and other necessary documents and pleadings in the case for the debtor's Chapter 13 Plan." Application at 1-2. In considering the Application,

> [d]epending upon the specific factual circumstances of a case, there are a variety of scenarios that may cause the Court to question the presumption that the "precalculated lodestar" provided for by the No–Look Fee is reasonable. For example, it may appear to the Court that a case demands substantially less attorney time than anticipated by the No–Look Fee or that the attorney has not discharged his or her duties with the necessary skill and professionalism contemplated by the No–Look Fee.

*In re Beale*, 553 B.R. 69, 83 (Bankr. E.D. Va. 2016) (citation omitted). *See also In re Cervantes*, 617 B.R. 687, 690 (Bankr. E.D. Cal. 2020) (noting authority to review a flat fee that may be "improvident in light of developments not capable of being anticipated").

In this case, which is ripe for dismissal with no plan confirmed, the $4,500.00 requested flat fee is $425.00 under the District of Maryland's maximum flat fee for an entire case, and

$988.00 under the Eastern District of Virginia's maximum full case fee. *See supra.* The Court finds that awarding the requested fee would be unreasonable in light of the failure to achieve a confirmable plan over more than 10 months since the petition was filed. In addition, because the second denial of confirmation was without leave to amend, there is no other possible posture for this case but a pre-confirmation dismissal. A reduction of fees approximating the difference between the actual lodestar (reasonable rate and reasonable hours) and the original flat fee is warranted here to account for the differences between the lodestar for a successfully completed chapter 13 case and one for a case ripe for dismissal pre-confirmation. As the Court does not have the benefit of the actual hours Counsel expended, the Court must evaluate the facts as presented, informed by other courts' opinions or presumptive fees in similar situations, including those based on estimates of how many fewer hours counsel expend on cases dismissed pre-confirmation than on those successfully represented to confirmation or conclusion.

The District of Maryland allows $2,175.00 for representation in "all matters relating to plan confirmation," which corresponds to 44 percent of the full case amount, and $3,825.00 for work through "90 days following the entry of the order confirming plan." D. Md. LBR App. F. An amount corresponding to 44 percent of the Eastern District of Virginia's maximum full case flat fee is $2,414.00. As a further example, the Eastern District of California uses the following table to estimate the percentage of hours expended, in terms of the percentage of a full case flat fee earned, through the various stages of a chapter 13 case:

- Phase I (pre-petition through meeting of creditors) – 30 percent earned.
- Phase II (meeting of creditors through initial confirmation) – 60 percent earned.
- Phase III (confirmation to 90 days after Notice of Filed Claims) – 80 percent earned.

  • Phase IV (discharge, closure, certifications, necessary lien clearances) – 100 percent.

*In re Cervantes*, 617 B.R. at 698 (footnote omitted). That court typically allows an administrative claim of 50 percent of the agreed full case flat fee amount when a chapter 13 case is dismissed pre-confirmation. *Id.* n.15. An amount equal to 50 percent of the agreed fee in this case is $2,250.00. The District of South Carolina also attributes approximately 60 percent of full case hours to pre-confirmation tasks:

> The greatest portion of an attorney's services covered by the No Look Fee are expected to occur prior to the confirmation of a plan, including but not limited to advising debtor both prior to and after the filing of the petition; compiling, providing and filing the debtor's information as required by the Code, applicable rules and the Trustee; filing the petition, schedules, statements and plan(s); reviewing proofs of claim; communicating with the Trustee, the Court and creditors; attending the meeting of creditors and confirmation hearings; and addressing confirmation concerns or objections of the Trustee and any other parties-in-interest.

*In re Smith*, 2021, WL 389381, at *7. An amount equal to 60 percent of the agreed fee in this case is $2,700.00.

  The Court is prepared to allow Counsel $2,500.00 as reasonable compensation for services rendered through January 22, 2021. This amount, which is 55.6 percent of the agreed fee, is higher than 44 percent of the maximum full flat fee in the District of Maryland and in the Eastern District of Virginia. However, pursuant to Federal Rule of Bankruptcy Procedure 2017, the Court will provide Counsel with an opportunity to provide documentation justifying a higher allowed fee, and to request a hearing on any supplemental application he may file to seek the amount denied. *See Younger*, 360 B.R. at 95-96.

### III. Conclusion

Therefore, for the foregoing reasons, it is ORDERED that

1. The *Application for Allowance of Compensation* (ECF No. 48) is **GRANTED IN PART**.

2. Counsel is allowed an administrative claim in the amount of $2,500.00, of which he has already received $1,500.00 to be applied against the administrative claim.

3. The chapter 13 trustee is authorized to disburse Counsel the unpaid $1,000.00 remainder of the allowed administrative claim out of funds she holds from the debtor's plan payments to the extent sufficient such funds are available net of any payment of the chapter 13 trustee's percentage fee.

4. Allowance of the remaining $2,000.00 requested is **DENIED**, except that within fourteen (14) days after the date of entry of this Order, Counsel may file a supplemental application for compensation for an amount up to this denied amount, to include invoice(s) reflecting contemporaneous time entries in support of the denied amount or affidavits or other information relevant to the reasonableness of the requested fee.

[Signed and dated above]

Copy to: Debtor; all counsel of record